Taylor, C. J.
—This action is brought by the father, for an injury done to him, by the loss of his daughter’s service, in consequence of her seduction by the defendant, and incidental illness. The examination of the daughter before the magistrates, is made evidence against the putative father, solely for the purpose of charging him with the maintenance of the child; and so far it is conclusive evidence, because he can adduce no evidence to repel it’s force, or exonerate himself from the burthen. To that single object the act of 1741, expressly confines it, and the court cannot give it a greater extent, without subverting every principle of just construction, established in relation to statute, altering the common law, as well as violating the spirit and policy of the general law of evidence; for the act neither requires the putative father to be summoned, nor furnishes him with the means of having the benefit of a cross-examination. It is a question between the county and the father, who shall bear the charge of the child, and in receiving the examination for that purpose, the letter and spirit of the law are obeyed: but if it be received for any other purpose, we must wander from both, and in so doing, offer violence to the common law and inflict a wound upon private rights. Shall such examination be conclusive evidence against the father, in an action constituted as this is, between him and the injured parent, when, if the daughter had negatived his being the father, it could not have been received in his favor? The very statement of the proposition furnishes the answer. In both cases it is res inter alios acta, and cannot, on either side, be admitted for the purposes of this action.
*105 2. The declaration made by the daughter, during her last illness, and under the apprehension of approaching death, was accompanied with an impressive solemnity,—a forcible appeal to every honest mind—a pathetic claim to confidence from the best feelings of the heart, as well as the most austere duties of the judgment, that seem to entitle it to as much consideration as any such evidence has hitherto received.
In cases where life is at stake, such evidence is uniformly received and credited, and numerous are the victims to its authority, recorded in the mournful annals of human depravity. Can the practice of receiving it to destroy life, and rejecting it where a compensation is sought for a civil injury, derive any sanction from reason, justice, or analogy? And though no direct precedent may exist to guide the court, yet it must be recollected that the law consists of principles, which precedents only tend to illustrate and confirm. In Woodcock's case the dying declarations were received, although the party wounded had not expressed any apprehensions of dying; because he had received a mortal wound, and his situation was such as would naturally preclude all temptation to falsehood. The case before us is stronger, for the woman believed she was dying and so expressed herself. It is also a circumstance in this case, upon which we chiefly ground ourselves, that the fact disclosed in her declaration could only be proved by herself; she was the injured party through whom the cause of action has arisen to the father. We give no opinion how far the dying declarations of an indifferent person, not receiving an injury, and not a party to the transaction, would be evidence in a civil case. Our decision is confined to the state of facts presented in this case; and in that we think the verdict has been properly found and ought not to be disturbed.